UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

DANIELLE ROSS,

                 *Plaintiff*,

    -against-

CAVALRY PORTFOLIO SERVICES, LLC,

                 *Defendant*.

-------------------------------------X

**MEMORANDUM AND ORDER**

23-CV-1113(KAM)(VMS)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Danielle Ross ("Plaintiff"), proceeding *pro se*, commenced the instant action against Defendant Cavalry Portfolio Services, LLC ("Defendant" or "Cavalry"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*., and N.Y. Gen. Bus. Law § 349, as well as negligence. (*See* ECF No. 1, Ex. A ("Compl.") at ¶¶9—16, 20—22.) Currently before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 13, Defendant's Notice of Motion to Dismiss.)  For the reasons stated below, Defendant's motion is **granted.**

## BACKGROUND

For the purpose of deciding Defendant's Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the FAC and exhibits attached thereto,[1] (*see* ECF No. 5, FAC), and draws all inferences in Plaintiff's favor. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). "When a plaintiff proceeds *pro se*, however, the Court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Scott-Monck v. Matrix Absence Mgmt., Inc.*, No. 19-cv-11798(NSR), 2022 WL 2908007, at *4 (S.D.N.Y. July 22, 2022) (internal quotations omitted), including "factual allegations made by a *pro se* party in his papers opposing the motion [to dismiss]." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

### I.   Factual Background

---

[1] "In reviewing a motion to dismiss, we 'may consider [not only] the facts alleged in the complaint, [but also] documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Sabir v. Williams*, 37 F.4th 810, 814 (2d Cir. 2022) (alterations in original) (citation omitted).

Plaintiff alleges that she is a "consumer" as defined by the FDCPA and that Defendant Cavalry "is a 'debt collector' as defined by the FDCPA because [Defendant] is engaged in the business of collecting debts owed to its clients and, as such, regularly collects or attempts to collect debts owed or due or asserted to be owed to another." (FAC at ¶¶3, 5.) The August 26, 2021 letter from Cavalry to Plaintiff, filed as Exhibit A to the FAC, indicates that Cavalry SPV I, LLC purchased a Citibank, N.A. consumer credit account with $19,312.43 owed at charge-off, and became the creditor for the account. (*See* Ex. A to the FAC, at 1.) The same letter states that Cavalry SPV I, LLC referred the account to Defendant for servicing. (*Id.*)

Plaintiff alleges that she received Cavalry's August 26, 2021 notice letter on September 6, 2021 but that the letter did "not put [Plaintiff] on notice to the [Defendant's] intention to place the alleged debt on the consumer credit report of [Plaintiff]." (*See* FAC at ¶6, ECF No. 13.5, Plaintiff Opposition ("Pl. Opp."), at 9.) Plaintiff alleges that she subsequently authorized a friend to send, on her behalf, a letter requesting Cavalry "to stop all communication" and noting her "refusal to pay on or around September 30, 2021," and that Cavalry received the notice "[o]n October 4, 2021." (*Id.* at ¶¶8–9.) Plaintiff's September 30 letter is attached to the FAC as Exhibit C, and Cavalry's subsequent response, dated October 4, 2021, is attached

to the FAC as Exhibit B.  The October 4 letter from Cavalry states
that it "enclosed the substantiation of [Plaintiff's] debt" and
notes that Plaintiff's account "is now subject to resumption of
collection efforts." (Ex. B to the FAC, at 2.)  Cavalry's October
4 letter attached two previous bills for a Citi Dividend Card in
Plaintiff's name, indicating a final outstanding balance of
$19,312.43 as of July 7, 2021.  (*Id.* at 5–8).

Plaintiff also includes in her complaint her credit
reports from Experian, Equifax, and Transunion (together, the
"Credit Reporting Agencies") as Exhibits E, F, and G, respectively,
and each credit report notes a balance of $19,312 due to Cavalry
Portfolio Services in the "Collections" section.  (*See* Ex. E to
the FAC, at 2; Ex. F to the FAC, at 2; Ex. G to the FAC, at 3).
Plaintiff's most recent credit report, from Experian, lists a
"[d]ate [g]enerated" of January 16, 2023.  (Ex. E to the FAC, at
5).  Each of the credit reports also includes language stating
that the account information is disputed by the consumer.  (*See*
Ex. E to the FAC, at 3; Ex. F to the FAC, at 2; Ex. G to the FAC,
at 3.)

Plaintiff further includes in her complaint a letter
from Chase dated April 8, 2022, denying her application for a Chase
Freedom Visa Platinum Account, (*see* Ex. H to the FAC, at 1), and
a letter from Chase dated October 7, 2022, denying her application
for a Chase Visa Signature business card account, (*see* Ex. I to

the FAC, at 1).  Both letters cite the fact that Plaintiff's credit report reflects "charge off(s) or bad debt collections(s)" as a reason for the denial.  (*See* Ex. H to the FAC, at 1; Ex. I to the FAC, at 1).

Plaintiff alleges that Cavalry violated the FDCPA by: (1) communicating with Plaintiff and Credit Reporting Agencies after receiving Plaintiff's notice to stop communications in violation of 15 U.S.C. § 1692c(c); (2) "report[ing] the alleged debt to the [credit] reporting agencies" without Plaintiff's consent in violation of 15 U.S.C. § 1692c(b); (3) engaging in "unlawful communication in connection with debt collection" in violation of 15 U.S.C. § 1692b(2); (4) employing a "harassing, oppressive, and abusive approach in connection with the collection of a debt against" Plaintiff in violation of 15 U.S.C. § 1692d; (5) "making it appear that [Plaintiff] owed money for an alleged debt after . . . refusal to pay was received by mail" in violation of 15 U.S.C. § 1692e; (6) "clearly violating" other provisions of the FDCPA in connection with debt collection in violation of 15 U.S.C. § 1692f; (7) "continuing collection activity" after receiving notice that the debt was disputed in violation of 15 U.S.C. § 1692g; (8) engaging in "unlawful consumer credit communication reporting" that was "materially misleading" in violation of N.Y. Gen. Bus. Law § 349; and (9) committing "professional malpractice" as a licensed professional debt

collector in the State of New York.  (FAC at ¶¶10, 12, 15, 18—22;
Pl. Opp. at 9.)

        Plaintiff alleges that due to Cavalry's actions "[she]
was denied credit and . . . suffered concrete injuries" including
"mental anxiety that has led to physical manifestations," the
necessity of taking unpaid leave from work "due to the mental and
emotional strain," the denial of credit by Chase Bank on two
separate occasions, and the creation of marital disputes related
to household finances.  (FAC at ¶¶23—24.)

## II.  Procedural History

        Plaintiff, proceeding *pro se*, commenced the instant
action by filing a complaint in the Supreme Court of the State of
New York, Kings County, on January 17, 2023.  (*See* Compl.)  Cavalry
received a copy of the complaint on January 21, 2023, and timely
filed a Notice of Removal in United States District Court for the
Eastern District of New York on February 10, 2023.  (*See* ECF No.
1 at 1—2.)  Cavalry's notice for removal stated that the case
"arises under federal law" given the alleged violations of the
FDCPA, and asked the Court to exercise supplemental jurisdiction
over the state law claims as "[those claims] form part of the same
case or controversy as Plaintiff's FDCPA claims."  (*Id.* at 2.)

        On February 16, 2023, Defendant filed a motion for a
pre-motion conference in anticipation of its motion to dismiss.
(*See* ECF No. 2, Defendant's First Motion for a Pre-Motion

Conference.)  On February 21, 2023, Plaintiff filed both an amended complaint (*see* FAC) and a response to Defendant's motion for a pre-motion conference, (*see* ECF No. 7, Plaintiff's Opposition to Defendant's First Motion for a Pre-Motion Conference.)  After receiving Plaintiff's Amended Complaint, Defendant filed a second letter requesting a pre-motion conference in anticipation of a motion to dismiss on February 24, 2023, (*see* ECF No. 6, Defendant's Second Motion for a Pre-Motion Conference), and Plaintiff replied on March 6, 2023, (*see* ECF No. 8, Plaintiff's Opposition to Defendant's Second Motion for a Pre-Motion Conference.)

On March 7, 2023, the Court issued an Order granting the Defendant's Second Motion for a Pre-Motion Conference and scheduling the conference for April 13, 2023 (subsequently postponed to April 21, 2023).  (*See* Orders dated March 7, 2023, and April 4, 2023.)

During the pre-motion conference, held on April 21, 2023, the Court advised Plaintiff that the Court would grant leave to file a Second Amended Complaint if she wished to do so in order to allege additional facts in support of her claims, but that if she declined the opportunity, Plaintiff likely would not be granted another opportunity to do so once motion practice began.  (*See* Minute Entry dated April 21, 2023).  Plaintiff represented multiple times that she would like to proceed to motion practice rather than amend her complaint a second time.  (*Id.*)  Subsequently,

Defendant moved to dismiss the FAC, Plaintiff opposed the motion, and Defendant's motion to dismiss was fully briefed on July 7, 2023. (*See* ECF No. 13, Defendant's Notice of Motion; ECF No. 13.1, Defendant's Memorandum of Law in Support of its Motion to Dismiss; ECF No. 13.5, Pl. Opp.; ECF No. 13.6, Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss.)

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Such treatment, however,

"does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics, citations, and internal quotation omitted).

## DISCUSSION

### I.   Standing

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted).  "The irreducible constitutional minimum of standing derives from Article III, Section 2 of the U.S. Constitution, which limits federal judicial power to cases and controversies." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (internal quotation marks and citations omitted).  To establish Article III standing, a plaintiff must show "(i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  At

the pleading stage, a plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [she] has standing to sue." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (internal quotation marks and citation omitted).

As the Supreme Court explained in *TransUnion*, simply alleging a statutory violation does not demonstrate a concrete injury. 141 S. Ct. at 2205; *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm."). Instead, Plaintiff must plausibly allege that the statutory violation resulted in a concrete injury, *i.e.*, a "physical, monetary, or cognizable intangible harm[] traditionally recognized as providing a basis for a lawsuit in American courts." *Harty*, 28 F.4th at 442-43 (quoting *TransUnion*, 141 S. Ct. at 2206).

The Court finds that Plaintiff has plausibly stated concrete injuries, specifically, being "denied credit . . . by Chase Bank on two separate occasions in the Year 2022," stemming from the alleged unlawful communications by Cavalry. (FAC at ¶¶4–5; Ex. H to the FAC, at 1; Ex. I to the FAC at 1.) Some of the

harms allegedly suffered by Plaintiff, such as "embarrassment from having to tell others about the current financial situation, depression, marital disputes mainly about finances . . . [inability] to invest into [a] business . . . [and] time [being] wasted," (FAC at ¶¶23–24), are vague, conclusory, and akin to the injuries found insufficient by other courts in this Circuit. *See, e.g., Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (conclusory allegations of "injury to [plaintiff's] credit worthiness," "increased difficulty obtaining credit," and "embarrassment, humiliation and other emotional injuries" insufficient for Article III standing); *Zlotnick v. Equifax Info. Servs.,* 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (conclusory allegations of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial" insufficient for Article III standing).

In the instant case, Plaintiff's allegation that she was denied two credit accounts due to the allegedly inaccurate credit reporting resulting from the allegedly unlawful communications by Cavalry constitutes a "specific allegation[] of . . . monetary harm" that confers Plaintiff constitutional standing. *Spira v. Trans Union, LLC*, No. 21-cv-2367(KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022); *see also Gross,* 607 F. Supp. 3d at 273 (holding, in Fair Credit Reporting Act context, that where the plaintiff's "alleged harms [were] not expenses, costs, any

specific lost credit opportunity, or specific emotional injuries," the allegations in the complaint failed to show how the defendant's alleged error reporting the wrong entity as the plaintiff's creditor "caused [the] plaintiff to suffer a 'concrete and particularized' harm"). As Plaintiff has pleaded sufficient facts to plausibly suggest that she suffered concrete injuries as required by Article III, the Court has subject matter jurisdiction over her FDCPA claims.[2]

## II. FDCPA Claims

The FDCPA, 15 U.S.C. §§ 1692 *et seq.*, was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e)), and to ensure that "those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (internal quotation marks omitted) (citing 15 U.S.C. § 1692(e)).

---

[2] Plaintiff also alleges that she suffered "physical manifestations" of the mental anxiety she was experiencing including "chest tightness, brief periods of hyperventilation, migraines from thinking about the situations, tremors, accelerated heartbeat, vertigo, loss of appetite, and loss of sleep." (FAC at ¶23.) Plaintiff further alleges that she applied for unpaid leave from work with her employer pursuant to the Family and Medical Leave Act due to the "mental and emotional strain inflicted by DEFENDANT." (*Id.*) The Court finds that Plaintiff has failed to plausibly state that the physical manifestations of anxiety and period of unpaid leave were caused, or worsened, by Cavalry's collection efforts that allegedly began when it sent Plaintiff a notice letter in August 2021.

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018).  Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Plaintiff alleges, and Defendant does not dispute, that she is a "consumer" within the meaning of the FDCPA and that Cavalry is a "debt collector." (FAC at ¶¶3, 5.)  As such, the only dispute regarding the FDCPA claims surrounds whether Plaintiff has alleged sufficient facts to support her claims that Cavalry's alleged acts constitute an act or omission in violation of the FDCPA.

FDCPA actions are also subject to a one-year statute of limitations, 15 U.S.C. § 1692k(d), and the "limitations period begins to run on the date the alleged FDCPA violation actually happened," *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (rejecting a general "discovery rule" to allow the FDCPA "limitations period

to run on the date an alleged FDCPA violation is discovered"). "A cause of action accrues under the FDCPA when injury occurs and the injured party has the right to bring suit for all of the damages caused by the defendant's acts." *Evans v. Select Portfolio Servicing, Inc.*, No. 18-cv-5985(PKC), 2020 WL 5848619, at *7 (E.D.N.Y. Sept. 30, 2020) (internal quotation marks and citation omitted). "Separate communications that violate the FDCPA can create separate causes of action." *Id.* (internal quotation marks and citation omitted). Courts in this district generally allow claims based on discrete violations that are within the statute of limitations, but bar those that occurred outside the period. *See, e.g., id.; Puglisi v. Debt Recovery Sols., LLC,* No. 08-cv-5024(JFB), 2010 WL 376628, at *3 (E.D.N.Y. Jan. 26, 2010).

### A. 15 U.S.C. § 1692c(c)

Section 1692c(c) states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except" under three exceptions. The exceptions are (1) "to advise the consumer that the debt collector's further efforts are being terminated" (*id.* at § 1692c(c)(1); (2) "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or

creditor" (*id.* at § 1692c(c)(2)); or (3) "where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy" (*id.* at § 1692c(c)(3)).

Plaintiff alleges that Defendant violated 15 U.S.C. § 1692c(c) by continuing to communicate with third parties, specifically the Credit Reporting Agencies, about the debt after receipt of Plaintiff's notice advising Cavalry to stop all communications and informing Cavalry of her refusal to pay. (FAC at ¶10.) Although not alleged in the original complaint, the Plaintiff also alleged in her opposition, for the first time, that "the defendant knowingly mailed [Plaintiff] a letter dated October 4, 2021 . . . . after receiving notice from plaintiff" in violation of 15 U.S.C. § 1692c(c). (Pl. Opp. at 16.) Though "[a] pro se plaintiff may not raise entirely new causes of action for the first time in [her] opposition papers, [] the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (internal quotation marks and citations omitted). In light of Plaintiff's *pro se* status, the Court will consider both alleged sets of violations.

Based on a plain reading of the statute, communications with Credit Reporting Agencies would not be prohibited by 15 U.S.C. § 1692c(c), which applies only to "communications with the

consumer." (*Id.*)  Plaintiff's allegations that these third-party communications "indirectly influence[] plaintiff's awareness and actions regarding the alleged debt" and thus constitute a communication with Plaintiff directly are not persuasive. (Pl. Opp. at 16.)  Plaintiff's interpretation of the statute is inconsistent with the language of 15 U.S.C. § 1692c(b), which expressly allows for communications by a debt collector to "a consumer reporting agency if otherwise permitted by law." As such, Defendant's alleged communications about the debt with Credit Reporting Agencies do not support a claim for a violation of Section 1692c(c).

Defendant's October 4, 2021 letter to Plaintiff falls more clearly within the meaning of 15 U.S.C. § 1692c(c), given it was a direct communication to the Plaintiff.  Any claim by Plaintiff as to this specific communication, however, is time-barred by the one-year statute of limitations for claims under the FDCPA.  *See* 15 U.S.C. § 1692k(d).  Although not raised by the Defendant, "a court may raise [a statute of limitations defense] *sua sponte* when 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" *Weaver v. Boriskin*, 751 F. App'x 96, 98-99 (2d Cir. 2018) (quoting *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011)).  As a result, given that Plaintiff filed her original lawsuit in January 2023, (*see* Compl.), any claims prior

to January 2022 are barred by the statute of limitations. Plaintiff does not allege Cavalry sent her any other communications subsequent to the October 4, 2021 letter and, consequently, Plaintiff's Section 1692c(c) claims are dismissed.[3]

### B.  15 U.S.C. § 1692c(b)

Section 1692c(b) states that "without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

Plaintiff alleges that Defendant violated 15 U.S.C. § 1692c(b) by reporting her alleged debt without her consent to

---

[3] Even if the claims regarding the October 4 letter were not time-barred, however, they would be dismissed on the merits.  Plaintiff waived any claim that responding to her September 30, 2021 letter violated § 1692c(c) by disputing the debt (referring to it as an "alleged debt") and refusing to pay.  (*See* Ex. C to the FAC at 1.)  In a situation where a "consumer notifies the debt collector that any portion of the debt is disputed, § 1692g(b) of the FDCPA requires the debt collector to cease collection activities until it provides verification of the debt to the consumer." *Villa v. Southwest Credit Sys., L.P.*, No. 19-cv-01701(JLS), 2021 WL 11617656, at *3 (W.D.N.Y. Jan. 29, 2021).  Because "verification is a statutorily required activity in order to resume collection activities, such communications are allowed implicitly under the specific remedy exception of 1692c(c)(3)." *Id.* (quotations omitted).  As such, "[e]ven a least sophisticated debtor would recognize that a dispute of a debt requires a response and so waives any directive from the debtor to the debt collector to cease communications." *See Duarte v. Midland Funding, LLC*, No. 17-cv-5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019).  Plaintiff's letter to Cavalry disputing the debt and refusing to pay waived any directive to cease communications as to the statutorily required debt verification notice subsequently sent to Plaintiff by Cavalry.

17

Credit Reporting Agencies.  (FAC at ¶12).  The language of the statute, however, *expressly* permits communications with "a consumer reporting agency if otherwise permitted by law."  15 U.S.C. § 1692c(b).  Given the clear language of the statute, any alleged communications by Cavalry to Credit Reporting Agencies regarding the debt in question would not constitute a violation unless shown to be not "otherwise permitted by law."  *Id.*  In the absence of any factual allegations showing that the alleged communications by Cavalry to the Credit Reporting Agencies were otherwise unlawful, Plaintiff's 15 U.S.C. § 1692c(b) must be, and is, dismissed.

### C. 15 U.S.C. § 1692b(2)

Section 1692b states that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . (2) not state that such consumer owes any debt."  Rather than providing a separate right of action, however, "[s]ection 1692b contains a list of exceptions to Section 1692c(b), which prohibits a debt collector from communicating, in connection with the collection of a debt, with anyone other than the 'consumer.'" *Morant v. Miracle Fin., Inc.*, No. 11-cv-4140(JS), 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012) (citing 15 U.S.C. § 1692c(b)). "Noncompliance with § 1692b is thus a violation of § 1692c(b), and

not an independent violation of the Act." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that Cavalry violated Section 1692b(2) by "conveying the alleged debt" in communications with third party Credit Reporting Agencies. (Pl. Opp. at 19). The Court will interpret this as an allegation that Cavalry violated Section 1692c(b), but nonetheless, Section 1692b's provision apply only to communications regarding *location information about the consumer*. The Plaintiff does not allege that Cavalry's communications with the Credit Reporting Agencies (or any other third parties) were for the purpose of acquiring location information about Plaintiff. As such, given Cavalry's alleged communications were not for the purpose of acquiring location information, any separate violation of Section 1692c(b) for not conforming with the requirements of Section 1692b(2) is not sufficiently alleged and is dismissed.

### D. 15 U.S.C. § 1692d

Section 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . (3) The publication of a list of consumers who allegedly refuse to pay debts, **except to a consumer reporting agency.**" (emphasis added).

Plaintiff alleges that Cavalry violated Section 1692d by "reporting [the alleged debt] to the [Credit Reporting Agencies]." (FAC at ¶18.) However, reporting such information to the Credit Reporting Agencies is "expressly permitted under § 1692d(3), and is among the options a debt collector may choose to encourage repayment of a debt." *Fashakin v. Nextel Commc'ns*, No. 05-cv-3080 (RRM), 2009 WL 790350, at *9 (E.D.N.Y. Mar. 25, 2009). Plaintiff's complaint does not include any allegations that Cavalry engaged in any conduct in violation of Section 1692d beyond reporting the debt to Credit Reporting Agencies. (FAC at ¶18.) Cavalry's conduct, in and of itself, does not constitute a violation, and Plaintiff's claim under Section 1692d is dismissed.

### E. 15 U.S.C. § 1692e

Section 1692e states that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." One example of such conduct proscribed by the statute is "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." (*Id.* at (8).)

Plaintiff alleges that Cavalry violated Section 1692e by "creat[ing] the presumption . . . that [Plaintiff] in fact owed a debt." (FAC at ¶19.) Plaintiff does not plead any facts

suggesting that Cavalry communicated false information regarding her debt, beyond conclusory statements suggesting that Cavalry's statements were "false, deceptive, and misleading." Furthermore, Plaintiff's allegations are undermined by the credit reports attached to her complaint, each of which includes language stating that the account information is disputed by the consumer. (*See* Ex. E to the FAC, at 3; Ex. F to the FAC, at 2; Ex. G to the FAC, at 3.) Plaintiff fails to allege any facts suggesting that Cavalry utilized false, deceptive, or misleading representations in connection with the collection of a debt, and as such, her claim regarding a violation of Section 1692e is dismissed.

### F. 15 U.S.C. § 1692f

Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Plaintiff alleges that Cavalry "attempt[ed] to collect an alleged debt through coercion" in violation of Section 1692f. However, this conclusory language fails in the absence of any facts to support the allegation. *See Alausa v. Monterey Fin. Servs., LLC*, No. 22-cv-3814(PKC), 2023 WL 6121780, at *6 (E.D.N.Y. Sept. 19, 2023) (plaintiffs do not state a claim when they fail to "allege any facts that Defendant exhibited shockingly unjust or unfair practices in connection with the collection of [the] debt"). Plaintiff also argues that Cavalry's other alleged violations of

the FDCPA, discussed *infra*, constitute an unfair means of debt collection, in violation of Section 1692f.  Courts in this Circuit, however, find that "where the allegations do not identify any misconduct beyond that which plaintiff asserts violate other provisions of the FDCPA, plaintiff has not stated a claim for relief under Section 1692f."  *See Duran v. Midland Credit Mgmt., Inc.*, No. 15-cv-5940 (RJS), 2016 WL 3661538, at *5 (S.D.N.Y. June 30, 2016) (internal quotation marks and citation omitted). Plaintiff does not state a claim under Section 1692f under either theory and the claim is dismissed.

### G. 15 U.S.C. § 1692g(b)

Section 1692g(b) states that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."  The statute notes, however, that "[c]ollection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a),"

provided that those "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.*

Although not alleged in the original complaint, the Plaintiff alleged in her opposition, for the first time, that "Defendant unlawfully reported the alleged debt to the CRA's in the month of September 2021 during the [30-day period]" in violation of Section 1692g. (Pl. Opp. at 9.) Plaintiff also alleges in her opposition that this communication of the alleged debt by Cavalry "overshadowed the validation period." (*Id.* at 11.) Plaintiff alleges that she responded to Cavalry's August 26, 2021 notice letter, which she received on September 6, 2021, on September 30, 2021, within the 30-day period to dispute the debt. (*Id.* at 9). Plaintiff also provides exhibits indicating that Cavalry received her letter on October 4, 2021, (Ex. D to the FAC, at 3) and that Cavalry responded with a letter also dated October 4, 2021 substantiating the debt, (Ex. B to the FAC, at 2).

The Court need not examine the merits of Plaintiff's claim that Cavalry violated Section 1692g by reporting the alleged debt to Credit Reporting Agencies during the 30-day period, as Plaintiff's claim is barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). The 30-day period under Section 1692g began running when Plaintiff received Cavalry's

August 26 notice letter on September 6, 2021, and ended upon Plaintiff's notification to Defendant regarding her refusal to pay on October 4, 2021. Plaintiff filed the instant action on January 17, 2023, and as such, FDCPA claims for communications prior to January 2022 are time-barred.[4] Plaintiff's untimely Section 1692g claims are therefore dismissed.

### H. State Law Claims

#### i. Supplemental Jurisdiction

Plaintiff also asserts claims of violations of N.Y. Gen. Bus. Law § 349 and professional malpractice, which arise under state law.[5]  "[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28

---

[4] As with Plaintiff's Section 1962c(c) claims, the Section 1962g claims would also fail on the merits even if they were not time-barred.  As other courts have noted, "nothing in the FDCPA prevents a debt collector that has not received a request for validation or other reply from a consumer from continuing to attempt to collect the debt during the 30 day validation period, provided that, in so doing, it does not create the impression that the consumer has less than 30 days in which to dispute the debt." *See Belichenko v. Gem Recovery Sys.*, No. 17-cv-01731 (ERK), 2017 WL 6558499, at *4 (E.D.N.Y. Dec. 22, 2017) (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 664 (S.D.N.Y. 2006)).  "The thirty-day window is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." *See* Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008).  Reporting a debt to a Credit Reporting Agency is a third-party communication authorized by Section 1692c(b), and Plaintiff does not allege any facts that Cavalry's communications otherwise violated the FDCPA during the 30-day period.

[5] Because Plaintiff alleges that she and Defendant are citizens of New York State (*see* FAC at ¶¶1-2), the Court lacks diversity of citizenship jurisdiction under 28 U.S.C. § 1332 to consider Plaintiff's state law claims.

U.S.C. § 1367(a)).   "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Id.* at 122 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)).   Weighing the values of judicial economy, convenience, fairness, and comity, the Court will exercise supplemental jurisdiction over the remaining state law claims in the instant case.   Plaintiff's allegations of misleading debt collection communications do not present "novel or unresolved questions of state law" that would implicate comity. *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir. 2003).   Judicial economy and convenience is served by retaining and exercising supplemental jurisdiction, because both parties have fully briefed the motion to dismiss, including on the state law claims, and as such, it is ripe for a decision.   Finally, principles of fairness weigh in favor of retaining jurisdiction, as plaintiff has already been afforded two opportunities to amend her complaint, one of which she declined.   (*See* Minute Entry dated April 21, 2023).

> **ii. N.Y. Gen. Bus. Law § 349 and Professional Malpractice**

N.Y. Gen. Bus. Law § 349 states that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared

unlawful."  Plaintiff alleges that Cavalry violated Section 349 through communications with Credit Reporting Agencies that were "materially misleading."  (FAC at ¶21.)  Plaintiff does not offer any further facts in support of this allegation, however, beyond the fact that her credit report reflects the alleged debt at issue in this case.  (*See* Ex. E to the FAC, at 2; Ex. F to the FAC, at 2; Ex. G to the FAC, at 3).  Plaintiff has not alleged any facts to suggest that Cavalry's communications to the Credit Reporting Agencies were false or misleading other than conclusory statements; consequently her N.Y. Gen. Bus. Law § 349 claim is dismissed.

Plaintiff also alleges that Cavalry committed professional malpractice by failing "to exercise an ordinary degree of professional skill resulting in [injury to plaintiff]." (FAC at ¶22.)  "Under New York law, professional malpractice is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages." *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000) (internal quotations and alterations omitted).  New York common law provides that "a person is negligent when he fails to exercise that degree of care which a reasonably prudent person would have exercised under the same circumstances." *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (2d Dep't 1983).

Plaintiff does not allege any facts suggesting that Cavalry was negligent, or that such negligence was the proximate cause of the damages she suffered. Rather, the facts alleged by Plaintiff show that Cavalry provided notice and verification of a debt as required by the FDCPA and undertook standard collection efforts, including transmitting information to Credit Reporting Agencies. Plaintiff's negligence claim for professional misconduct is accordingly dismissed.

## CONCLUSION

For the forgoing reasons, Defendant's motion to dismiss is **granted.** The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close this case. Defendant is requested to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket no later than October 31, 2023.

**SO ORDERED**

Dated:   October 26, 2023
         Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York